**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(CIVIL DIVISION)**

| | | |
|---|---|---|
| GRUNLEY CONSTRUCTION COMPANY, INC., | ) | |
| 15020 Shady Grove Road, Suite 500 | ) | |
| Rockville, MD 20850 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:16-cv-1312 |
| v. | ) | |
| | ) | |
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | |
| 307 International Circle | ) | |
| Hunt Valley, MD 21030 | ) | |
| | ) | |
| Serve on Registered Agent: | ) | |
| | ) | |
| Corporation Service | ) | |
| 1090 Vermont Ave., NW Suite 40 | ) | |
| Washington, DC 20005 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Grunley Construction Company, Inc. ("Grunley"), by counsel, for its Complaint against
Defendant, Hartford Casualty Insurance Company ("Hartford"), hereby states as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of a performance bond brought by Grunley against
Hartford arising out of underlying breaches of a subcontract committed by RV Carey's Plumbing
and Heating ("RV"), the principal of Hartford.

## PARTIES

2.      Grunley is a construction company incorporated in Maryland with its principal
office in Rockville, Maryland.

3.      On information and belief, Hartford is a corporation organized and existing under the laws of Indiana, with its principal place of business located in Connecticut.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391, in that Grunley does business in this judicial district, and a substantial part of the events giving rise to the claims at issue in this case took place in this judicial district.

## FACTUAL ALLEGATIONS

4.      In 2014, Grunley, as general contractor, entered into a prime contract with Euro Capital Properties, LLC, as owner, to conduct renovations on the Watergate Hotel, which is located at 2650 Virginia Avenue, NW, Washington, D.C. 20037 (the "Project").

5.      On or about May 14, 2014, Grunley and RV entered into a subcontract (the "Subcontract") in which RV agreed to perform certain plumbing work on the Project.  The original price of the Subcontract was $3,466,885.  A true and correct copy of the Subcontract is attached hereto as Exhibit A.

6.      On or about September 18, 2014, Hartford, as surety, issued a Performance Bond, No. 42BCSGV0058, on behalf of RV, as principal, and in favor of Grunley, as obligee (the "Performance Bond").  A true and correct copy of the Performance Bond is attached hereto as Exhibit B.  In the Performance Bond, Hartford guaranteed the performance of its principal, RV, under the Subcontract.

7.      The terms of the Subcontract are expressly incorporated into the Performance Bond by reference.

8.      Under the express terms of the Subcontract (which are incorporated by reference into the Performance Bond), RV covenanted and agreed to diligently and continuously prosecute and complete the work required by the Subcontract.  Specifically, Article 25 of the Subcontract provides, in pertinent part: "The Subcontractor shall employ at all times a sufficient number of workmen with sufficient equipment and proper materials which in the opinion of the Contractor shall be required to prosecute the Work in a diligent and expeditious manner."  (Exhibit A, Subcontract, Article 25).  Additionally, Article 10 of the Subcontract provides:

> Time is of the essence with respect to the Subcontractor's performance of the work and Subcontractor's compliance with the terms and conditions of the Subcontract. The Contractor has the right to direct the manner in which the Subcontractor performs its work.  Subcontractor shall proceed with the performance of the work at such time and in such sequence as the Contractor may direct and/or as required by the Schedule of Progress, which may be updated and revised from time to time by the Contractor as working conditions require, including overtime or shift work performance as necessary.  If overtime or additional shifts are required solely to accelerate project completion through no fault of the Subcontractor, it shall be authorized in writing prior to such acceleration effort and be paid for by the Contractor.  Payments due may be withheld to ensure timely progress and completion of work.  The Subcontractor shall be liable for all losses and damages incurred by the Contractor (including consequential damages and legal fees) due to inexcusable delays of the Subcontractor in the performance of the work, including delay costs not reimbursable from the Owner due to concurrent, inexcusable delays of the Subcontractor.

(Exhibit A, Subcontract, Article 10).

9.      Under the express terms of the Subcontract (which are incorporated by reference into the Performance Bond), RV covenanted and agreed that Grunley would be entitled to take certain steps to ensure that defective work under the Subcontract would be corrected.  In this regard, Article 15 of the Subcontract provides, in relevant part:

3

Rejection by Contractor of any or all parts of defective work for failure to conform with the Subcontract shall be final and binding.  Such rejected work shall promptly be corrected or replaced by Subcontractor at Subcontractor's expense.  If Subcontractor fails to commence and diligently continue correction or replacement of such  rejected work within forty-eight (48) hours, after receipt of written notice from Contractor to correct or replace the rejected work, Contractor may at its option remove and replace the rejected work and Subcontractor shall promptly reimburse Contractor for the costs of such removal and replacement of defective work.

(Exhibit A, Subcontract, Article 15).

10.    Under the express terms of the Subcontract (which are incorporated by reference into the Performance Bond), RV covenanted and agreed that Grunley would be entitled to take certain steps to ensure the completion of the Subcontract work in the event of a default by RV with respect to its obligations under the Subcontract and upon three (3) days' notice of such default by Grunley.  In this regard, Article 14 of the Subcontract provides, in relevant part:

The following events determined by the good faith judgment of the Contractor shall be deemed a breach of this Agreement by the Subcontractor: failure to expeditiously prosecute and complete the whole or any part of the Work in accordance with the current Schedule of Progress and/or directions from the Contractor; failure to pay for labor and material, payroll taxes, contributions, or insurance premiums; interference with the performance of work by others for any reason; an act of bankruptcy or insolvency; or any other material failure to fulfill obligations of this Subcontract or of the Prime Contract concerning the Subcontractor's work or responsibilities. lf the Subcontractor breaches the Subcontract, Contractor shall have the right, after three (3) days written notice to the Subcontractor , in addition to any other rights and remedies provided by this Agreement, the other Contract Documents or by law: (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work, enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools, appliances, and other items thereon, all of which the Subcontractor hereby transfers, assigns, and sets over to Contractor for such purpose, and to employ any person or persons to complete the Work and provide all the labor, services, materials, equipment, and other items required therefore. In the event that the Contractor believes in good faith that the work is being endangered by the Subcontractor's failure to prosecute the work or take action, such written notice may be omitted and the Contractor may immediately take the actions set forth in this Article 14.

4

In case of termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work is completed to the satisfaction of Contractor and the Owner. lf the unpaid balance of the amount to be paid under this Agreement exceeds the cost and expense incurred by Contractor in completing the Work, such excess shall be paid by Contractor to the Subcontractor; but if the cost and expense to complete the Work exceeds the unpaid balance, then the Subcontractor and its surety shall pay the difference to Contractor. Such cost and expense shall include: i) the cost of performing and furnishing all labor, services, materials, equipment, and other items required to complete the Work to the satisfaction of Contractor and the Architect, ii) all losses, damages, costs, and expenses (including legal fees and disbursements incurred in connection with reprocurement, in defending claims arising from such default and in seeking recovery of all such cost and expense from the Subcontractor and/or its surety), and iii) all liquidated damages and other disbursements sustained, incurred, or suffered by reason of or resulting from the Subcontractor 's default. Contractor does not waive any other rights or remedies available to the Contractor, including right of setoff and collection of any funds which may be due Subcontractor under other subcontracts with the Contractor. If the Contractor wrongfully exercises its default option under this Article, the Subcontractor's remedy shall be solely and exclusively under Article 29, Termination for Convenience.

(Exhibit A, Subcontract, Article 14).

11.     RV was obligated to perform its work in accordance with the durations set forth in Exhibit D to the Subcontract.

12.     RV failed to perform its work in accordance with the durations set forth in Exhibit D to the Subcontract.

13.     Throughout performance, RV failed to provide sufficient manpower or make sufficient progress.

14.     By letter dated May 13, 2015, Grunley sent to RV, with copy to Hartford,  a Notice to Cure letter, stating in pertinent part:

The plumbing work by R.V. Carey's Plumbing & Heating, Inc. (R.V. Carey) in the B-1 level kitchen area and the B-2 level Central Plant is not complete at this time. In accordance with the attached April 26 & 27, 2015 correspondence, the subject work was to be completed by May 8, 2015. Grunley provided two (2) additional days for the time lost on May 1, 2015 through May, 4, 2015.

In accordance with Article 14, Default Termination, of your subcontract agreement this letter is notification that R. V. Carey has three (3) days to cure its default at which time Grunley reserves its rights [to] take remedial actions within the terms of the subcontract agreement including but not limited to supplementation of manpower and materials and withholding of payments.

15.    By letter dated May 15, 2015, Grunley sent to RV, with copy to Hartford,  a Notice to Cure letter, stating in pertinent part:

R.V. Carey's Plumbing & Heating, Inc. (R.V. Carey) has not provided Grunley Construction Co., Inc. (Grunley) with adequate coordination drawings or evidence of maintained as-built documents as requested in the attached April 26, 2015 correspondence.

As-built documentation is a contract requirement and a necessity to be completed in advance of ceiling close-ins. In accordance with Article 14, Default Termination, of your subcontract agreement this letter is notification that R.V. Carey has three (3) days to cure its default at which time Grunley reserves its rights to take remedial actions within the terms of the subcontract agreement including but not limited to supplementation of manpower to document R. V. Carey's as-built conditions and withholding of payments if necessary.

16.    By letter dated January 22, 2016, Grunley sent to RV, with copy to Hartford,  a Notice to Cure letter, stating in pertinent part:

RV Carey's Plumbing and Heating, Inc. is currently in default of the Subcontract Agreement dated May 14, 2014 between Grunley Construction Company, Inc. ("Grunley") and RV Carey's Plumbing and Heating, Inc. ("RV Carey") on the above project for the issues described within this letter.

Between column lines D5 and D6, gas piping installation was installed deficiently. Between column lines D6 and D7, gas piping was installed in the incorrect location on the outside of the column, adjacent to the food service equipment, where the piping should have been installed behind the food service equipment. In accordance with the Subcontract Agreement, Article 3 Contract Documents and Scope Inclusion Item 7, RV Carey has failed to properly coordinate the work with the existing conditions, other subcontractors, and the contract documents.

On January 4, 2016 Grunley provided notice to RV Carey to relocate the deficient and incorrect installations in accordance with Article 15 of the Subcontract Agreement. On January 5, 2016 Grunley provided notice to RV Carey to install the shut-off valves furnished by the Food Service Subcontractor as delineated in Subcontract Inclusion Item 33. RV Carey has not taken action since these notifications. In accordance with Article 14 of the Subcontract Agreement, Grunley

believes in good faith that the turnover of the Kitchens is being endangered. In order to remediate delays to the project and assessment of damages, Grunley has taken action to have these deficient installations demolished and reinstalled as properly coordinated. Costs associated with demolition and rework will be offset from RV Carey to pay for this rework. The labor and material cost to perform the gas piping alone is estimated to be $10,000, this value does not include the rework required for other architectural trades impacted by these installations.

In accordance with Scope Inclusion Item 7 of the Subcontract Agreement, RV Carey shall "…maintain as-built drawings as required by the Contract Documents for your scope of work" and General Requirement Item 15 of the Subcontract Agreement, "Subcontractor's project record documents are to be updated daily and will be reviewed periodically for accuracy and completeness." Grunley requests for RV Carey to submit its as-built record documents for review. Deliver these documents to Grunley's field office by no later than January 27, 2016.

As previously iterated, due to RV Carey's inadequate manpower Grunley believes in good faith that the turnover of the Kitchens is being endangered. In accordance with the Subcontract Agreement, Scope Inclusion Item 18 and Article 14, Grunley has directed the stainless steel/chrome plated brass piping work in the kitchens to commence on RV Carey's behalf.

. . .

Grunley will continue to perform the kitchen work on RV Carey's behalf until RV Carey provides adequate manpower to perform the work in the kitchens. The labor and material cost to perform the stainless steel/chrome plated brass piping is estimated to be $100,000.

Contract Drawing P.2B1A indicates a plumbing fixture at column line C-9. In accordance with Inclusion Item 28 of the Subcontract Agreement and Article 9, "The complete set of submissions for this Subcontract work shall be submitted by the Subcontractor to the Contractor within thirty (30) days from the date of this Subcontract…" Grunley has yet to receive the submittals for this fixture.  In accordance with Article 14 of the Subcontract Agreement, RV Carey shall provide this submittal in addition to any other outstanding shop drawings, samples, and data submissions within seventy-two (72) hours. Grunley believes in good faith that the turnover of the Kitchens is being endangered. Should RV Carey not provide this and other outstanding submittals, in accordance with Article 14 of the Subcontract Agreement, Grunley will "perform…through others any such labor or materials for the Work and to deduct the cost thereof…" The labor and material cost to perform this work is estimated to be $1,000.

Domestic water packaged booster pumps are currently installed without vibration isolators; the assembly is merely set on neoprene shims. This installation is deficient and not in accordance with the contract documents. RV Carey shall

provide a plan of action to rectify this deficient installation within forty-eight (48) hours of this notification and execute the remediation of the deficient work within forty-eight (48) additional hours of this notice in accordance with Article 15 of the Subcontract Agreement.  Should the work not be performed within the dictated schedule, Grunley will "perform…through others any such labor or materials for the Work and to deduct the cost thereof…" in accordance with Article 14 of the Subcontract Agreement. Grunley is withholding $32,000 for this work as identified in RV Carey's schedule of values.

The seventh floor balcony drains have not been installed to date, which is impacting waterproofing of the balconies. On January 11, 2016 Grunley provided notice to RV Carey to provide and install the drains. No subsequent action has been taken to provide and install the drains. In accordance with Article 14 of the Subcontract Agreement, Grunley believes in good faith that the turnover of the Guest Rooms is being endangered and therefore, Grunley has procured these drains which are currently onsite.  Should the work not be performed within forty-eight (48) hours, Grunley will "perform… through others any such labor or materials for the Work and to deduct the cost thereof…" in accordance with Article 14 of the Subcontract Agreement. The labor and material cost to perform the drain installation work is estimated to be $25,000.

In accordance with Article 25 of the Subcontract Agreement, "…The Subcontractor shall employ at all times a sufficient number of workmen with sufficient equipment and proper materials which in the opinion of the Contractor shall be required to prosecute the Work in a diligent and expeditious manner." In the opinion of . . . Grunley, RV Carey is not employing a sufficient number of workmen required to prosecute the work. RV Carey shall provide additional manpower to expeditiously complete the work. Grunley had previously notified RV Carey on January 2, 2016 and continues to notify RV Carey of this default. Article 27 of the Subcontract Agreement indicates that "Subcontractor shall employ full-time on the jobsite a competent Superintendent."  General Requirement Item 30 indicates that "Subcontractor shall submit daily reports to Grunley Construction…which shall indicate the number of workers on site…" RV Carey has been performing work on site, but without adequate supervision and manpower and has not submitted a daily report since November 2015. RV Carey shall increase manpower immediately and submit qualifications of RV Carey's on site Superintendent by no later than January 27, 2016. Should RV Carey not provide additional manpower within seventy-two (72) hours, Grunley will "perform…through others any such labor or materials for the Work and to deduct the cost thereof…" in accordance with Article 14 of the Subcontract Agreement.

In accordance with Article 14, Default Termination, RV Carey shall cure the aforementioned issues.  Should RV Carey not cure these issues, Grunley will exercise its rights under Article 14, Default Termination. Grunley hereby reserves all rights and remedies available to it against RV Carey under the Subcontract

Agreement, including any right of set off against any funds that may be due to RV Carey.  Time is of the essence.

17.     Despite the multitude of notices issued by Grunley to RV, RV did not cure its deficient and/or untimely performance.  Likewise, despite these notices, upon which Hartford was copied, Hartford did not respond either to cure RV's breaches of the Subcontract, to supplement RV's work, or to reimburse Grunley for its damages, *i.e.*, the difference between RV's subcontract balance and the total cost expended by Grunley to complete or correct RV's work, payments to PDM's subcontractors or suppliers, and other default related damages.

18.     To date, RV has failed to honor its obligations under the Subcontract and Hartford has failed to honor its obligations under the Performance Bond, including those obligations expressly imposed on Hartford by the Subcontract, which the Performance Bond incorporates by reference.

19.     As a result of Hartford's (and RV's) default, Grunley has incurred and will continue to incur damages, including completion, administrative, overhead, and other costs, interest, and attorneys' fees.

20.     Grunley has performed all the terms and conditions required of it under the Subcontract and the Performance Bond and/or is otherwise excused from its performance obligations because of RV's breaches of its obligations to Grunley.

21.     This action is being brought within two years from the date of substantial completion of the Project, as required by the Performance Bond.

## COUNT I
### (Breach of Performance Bond)

22.     The allegations in the foregoing Paragraphs are incorporated herein by reference as if fully stated herein.

23.     Hartford issued a Performance Bond whereby Hartford agreed, among other things, to pay Grunley, as obligee, all amounts owed to Grunley by reason of RV's default under the Subcontract, up to $3,466,885.   Hartford and RV are jointly and severally liable under the Performance Bond.

24.     Hartford was informed timely of RV's default under the Subcontract and failed or refused to cure the default.

25.     Hartford has failed to perform its obligations under the Performance Bond.

26.     Hartford's failure to perform its obligations under the Performance Bond constitutes a breach of contract.

27.     Hartford's failure and refusal to perform its obligations under the Performance Bond constitutes a breach of its duty of good faith and fair dealing.

28.     Grunley performed all the terms and conditions required of it under the Subcontract and the Performance Bond and/or is otherwise excused from performance because of RV's breach of its obligations to Grunley and/or Hartford's breach of its obligations to Grunley.

29.     As a result of Hartford's material breaches, Grunley has suffered, and will suffer, substantial damages, in excess of $250,000.

30.     Hartford and RV are jointly and severally liable to Grunley for the damages incurred.

31.     Grunley is entitled to an award of interest, costs, and attorney's fees against Hartford.

WHEREFORE, Grunley demands judgment in its favor and against Hartford for damages in an amount to be proven at trial which is in excess of $250,000, as well as all other damages, costs, and expenses, including attorney's fees, incurred by Grunley as a result of Hartford's failure

to perform and other breaches, and for such further and different relief as the Court deems just and

proper.

Date:   June 24, 2016                           Respectfully submitted,


                                                */s/ Robert J. Symon*
                                                Robert J. Symon, Esq. (Bar No. 436245)
                                                Eric A. Frechtel, Esq. (Bar No. 476967)
                                                Amy E. Garber, Esq. (Bar No. 498404)
                                                BRADLEY ARANT BOULT CUMMINGS LLP
                                                1615 L Street, N.W., Suite 1350
                                                Washington, DC 20036
                                                Telephone:     (202) 393-7150
                                                Facsimile:     (202) 347-1684
                                                Email:         rsymon@babc.com
                                                               efrechtel@babc.com
                                                               agarber@babc.com

                                                *Counsel for Plaintiff*
                                                *Grunley Construction Company, Inc.*